[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Feltner v. Cuyahoga Cty. Bd. of Revision*, Slip Opinion No. 2020-Ohio-3080.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3080

THE STATE EX REL. FELTNER *v*. CUYAHOGA COUNTY BOARD OF REVISION ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Feltner v. Cuyahoga Cty. Bd. of Revision*, Slip Opinion No. 2020-Ohio-3080.]

*Prohibition—R.C. 323.66—Writ sought to invalidate a foreclosure adjudication by a county board of revision—Board of revision did not patently and unambiguously lack jurisdiction—Writ denied.*

(No. 2018-1307—Submitted November 13, 2019—Decided May 28, 2020.)

IN PROHIBITION.

_____

FRENCH, J.

{¶ 1} R.C. 323.66(A) authorizes boards of revision to adjudicate foreclosures involving certain tax-delinquent abandoned land. In this original action, an owner whose property was the subject of a board-of-revision foreclosure seeks a writ of prohibition to invalidate the foreclosure adjudication. The owner contends that the

board of revision lacked authority to foreclose on his property because the statutes under which the board proceeded are unconstitutional. We deny the writ because the board of revision did not patently and unambiguously lack jurisdiction when it proceeded in the foreclosure action at issue.

**Background**

{¶ 2} In 2006, the General Assembly passed legislation authorizing boards of revision to adjudicate tax-foreclosure actions involving abandoned land. *See* 2006 Sub.H.B. No. 294, 151 Ohio Laws, Part IV, 7334. These proceedings are designed to be an expeditious alternative to conventional judicial foreclosures. *See* R.C. 323.67(B)(1) and (C). Among other things, the law allows a board of revision, under certain circumstances, to order the sheriff to transfer property directly to a county land-reutilization corporation (or some other statutorily eligible political subdivision), without the need for an appraisal and public auction. R.C. 323.65(J), 323.71(A)(1), 323.73(G), 323.78.

{¶ 3} In June 2017, respondent Cuyahoga County Board of Revision ("BOR") entered a judgment of foreclosure concerning real property owned by relator, Elliott G. Feltner. After its judgment, the BOR transferred Feltner's property to the Cuyahoga County Land Reutilization Corporation ("the Land Bank") under R.C. 323.78. The Land Bank later transferred the property to a third party.

{¶ 4} More than a year later, Feltner filed this original action, asserting multiple prohibition and mandamus claims against the BOR, its members,[1] the Cuyahoga County treasurer, Cuyahoga County, the Land Bank, and the Attorney General. We previously dismissed the Cuyahoga County treasurer, Cuyahoga County, the Land Bank, and the Attorney General as parties. 155 Ohio St.3d 1403, 2019-Ohio-943, 119 N.E.3d 431. But we granted an alternative writ of prohibition as to two of the claims

---

1. The members of the BOR are respondents Armond Budish, Michael Gallagher, and Michael Chambers, who is substituted automatically for former board member Dennis G. Kennedy as a party to this action. S.Ct.Prac.R. 4.06(B).

against the BOR and its members. *Id.* Those claims present the question whether the statutes under which the BOR proceeded violate the separation-of-powers doctrine or the due-process clauses of the United States and Ohio Constitutions.

{¶ 5} The case is now ripe for our final determination.

**Analysis**

{¶ 6} To be entitled to a writ of prohibition, a relator ordinarily must prove that a lower tribunal is about to exercise judicial or quasi-judicial power without authority and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Sliwinski v. Burnham Unruh*, 118 Ohio St.3d 76, 2008-Ohio-1734, 886 N.E.2d 201, ¶ 7. This standard reflects the well-established rule that prohibition "is a preventive rather than a corrective remedy, and issues only to prevent the commission of a future act, and not to undo an act already performed." High, *Treatise on Extraordinary Legal Remedies*, *Embracing Mandamus, Quo Warranto and Prohibition,* Section 766, at 606 (2d Ed.1884).

{¶ 7} The BOR is not about to exercise power concerning the property Feltner once owned—Feltner commenced this prohibition action more than a year after the BOR entered its final judgment. The BOR and its members contend that this fact alone precludes us from granting the writ in this case.

{¶ 8} But in *State ex rel. Adams v. Gusweiler*, 30 Ohio St.2d 326, 285 N.E.2d 22 (1972), paragraph two of the syllabus, we recognized an exception to the general rule, holding that a writ of prohibition may issue correctively to arrest the continuing effects of an order when there was "a total want of jurisdiction" on the part of the lower tribunal. A few years after *Gusweiler*, we began to associate the exception with the modifying phrase "patent and unambiguous." *See State ex rel. Gilla v. Fellerhoff*, 44 Ohio St.2d 86, 87-88, 338 N.E.2d 522 (1975). We also began using that term with respect to a related exception adopted in *Gusweiler* at 329—namely, that the availability of an adequate remedy is immaterial when a tribunal patently and unambiguously lacks jurisdiction. *See, e.g., State ex rel. Koren v. Grogan*, 68 Ohio

St.3d 590, 595, 629 N.E.2d 446 (1994). Over time, we have issued writs of prohibition to correct the results of unauthorized exercises of authority, notwithstanding the availability of an appeal, if the tribunal patently and unambiguously lacked jurisdiction to enter the judgment at issue. *See, e.g., State ex rel. V.K.B. v. Smith*, 142 Ohio St.3d 469, 2015-Ohio-2004, 32 N.E.3d 452, ¶ 8. And so, the narrow issue before us is whether the BOR patently and unambiguously lacked jurisdiction to adjudicate the foreclosure of Feltner's property.

{¶ 9} We typically will not hold that a tribunal patently and unambiguously lacked jurisdiction if the tribunal "had at least basic statutory jurisdiction to proceed." *Gusweiler* at 329. Therefore, in prohibition cases involving statutorily created tribunals of limited jurisdiction, we ordinarily ask whether the General Assembly gave the tribunal authority to proceed in the matter at issue. *See, e.g., State ex rel. Goldberg v. Mahoning Cty. Probate Court*, 93 Ohio St.3d 160, 162, 753 N.E.2d 192 (2001); *State ex rel. Natalina Food Co. v. Ohio Civ. Rights Comm.*, 55 Ohio St.3d 98, 100, 562 N.E.2d 1383 (1990).

{¶ 10} Here, the legislature clearly gave the BOR statutory authority to proceed. *See* R.C. 323.25 and 323.65 through 323.79. But this case presents a more complicated issue because Feltner contends that the BOR's statutory authority is unconstitutional. The question, then, is the extent to which we may consider the merit of Feltner's constitutional challenge in deciding whether the BOR patently and unambiguously lacked jurisdiction.

{¶ 11} To date, we have not squarely explained what constitutes a patent and unambiguous lack of jurisdiction when a relator seeks to undo a final judgment by challenging the constitutionality of a lower tribunal's statutory authority. But our case law includes numerous examples in which we held that a tribunal did not patently and unambiguously lack jurisdiction under the specific law or facts at the time of the challenged proceedings. Most notably, in *Sliwinski*, 118 Ohio St.3d 76, 2008-Ohio-1734, 886 N.E.2d 201, at ¶ 21, we declined to resolve a constitutional challenge

4

to legislation in view of the rule that a statute is presumed to be constitutional. In other cases, we indicated that a tribunal cannot patently and unambiguously lack jurisdiction if the absence of jurisdiction is not clear under *then-existing* law. *See State ex rel. Worrell v. Athens Cty. Court of Common Pleas*, 69 Ohio St.3d 491, 496, 633 N.E.2d 1130 (1994) (common pleas court's lack of jurisdiction was not patent and unambiguous prior to enactment of new statute conferring exclusive jurisdiction on the Court of Claims); *Natalina Food Co.*, 55 Ohio St.3d at 100, 562 N.E.2d 1383 (relator could not demonstrate tribunal's patent and unambiguous lack of jurisdiction in the absence of any statutory or constitutional authority that "definitively" prevented its exercise of jurisdiction); *State ex rel. Henry v. Britt*, 67 Ohio St.2d 71, 75, 424 N.E.2d 297 (1981) (court's lack of jurisdiction was not patent and unambiguous when the underlying jurisdictional question was "not well settled"). And in *State ex rel. McSalters v. Mikus*, 62 Ohio St.2d 162, 163, 403 N.E.2d 1215 (1980), we declined to hold that a tribunal patently and unambiguously lacked jurisdiction because the jurisdictional question turned on the specific facts of the case. Importantly, we did not suggest in these prohibition cases that the claims presented were incapable of resolution or that they could not be resolved at the appropriate time in an appropriate forum. We simply concluded that the respondents named in each did not obviously lack jurisdiction under the law at the time.

{¶ 12} Cases in which we *have* found an obvious lack of jurisdiction support the idea that we must examine then-existing law (e.g., a statute, a rule, or precedent) when determining whether a tribunal patently and unambiguously lacked jurisdiction. *See, e.g.*, *State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas,* 60 Ohio St.3d 78, 80, 573 N.E.2d 606 (1991) ("Although R.C. 2305.01 gives common pleas courts original jurisdiction in civil matters generally, R.C. 2743.02(F) patently and unambiguously takes it away from them in a specific class of civil cases"); *Ohio Dept. of Adm. Servs., Office of Collective Bargaining v. State Emp. Relations Bd.*, 54 Ohio St.3d 48, 52-53, 562 N.E.2d 125 (1990) (holding that a court lacked

jurisdiction to hear an appeal under existing precedent interpreting a statute); *State ex rel. Safeco Ins. Co. of Am. v. Kornowski*, 40 Ohio St.2d 20, 21-22, 317 N.E.2d 920 (1974) (holding that a rule of appellate procedure patently and unambiguously did not confer jurisdiction on a court).

{¶ 13} In this light, the answer to the narrow question before us becomes clear. When a relator in a prohibition action seeks to undo a final judgment by challenging the constitutionality of the statutory authority under which a lower tribunal acted, a court may consider only whether the authorizing statute was clearly unconstitutional under precedent existing at the time of the lower tribunal's judgment in determining whether the lower tribunal patently and unambiguously lacked jurisdiction. This rule is consistent with our caselaw, which recognizes that the limited purpose of a writ of prohibition is to police exercises of "ultra vires jurisdiction" by lower tribunals. *State ex rel. Nolan v. ClenDening*, 93 Ohio St. 264, 112 N.E. 1029 (1915), paragraphs three and four of the syllabus. In reality, a different rule—one that would allow for the issuance of a writ of prohibition to undo the outcome of a proceeding even when a tribunal exercised authority under a presumptively valid statute—would expand the writ beyond its limited purpose.

{¶ 14} In this case, at the time of its judgment, the BOR acted with apparent (and presumptively valid) statutory authority. We cannot conclude that the BOR patently and unambiguously lacked jurisdiction to proceed under these circumstances. We therefore have no authority to undo the BOR's final judgment and need not consider the merit of Feltner's constitutional challenge. *See Smith v. Leis*, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d 5, ¶ 54 ("courts decide constitutional issues only when absolutely necessary").

Writ denied.

DONNELLY and HENDRICKSON, JJ., concur.

KENNEDY, J., concurs in judgment only.

FISCHER, J., concurs in judgment only, with an opinion joined by O'CONNOR, C.J.

DEWINE, J., concurs in judgment only, with an opinion.

ROBERT A. HENDRICKSON, J., of the Twelfth District Court of Appeals, sitting for STEWART, J.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 15} I agree with the lead opinion's conclusion that we should deny the writ of prohibition against respondents Cuyahoga County Board of Revision ("BOR"), Armond Budish, Michael Chambers, and Michael Gallagher, albeit for different reasons. Therefore, I respectfully concur in judgment only.

{¶ 16} I also write to express my concerns with this court's decision to dismiss counts V and VI alleged in the complaint filed by relator, Elliott G. Feltner. *See State ex rel. Feltner v. Cuyahoga Cty. Bd. of Revision*, 155 Ohio St.3d 1403, 2019-Ohio-943, 119 N.E.3d 431.

### I. Patent and Unambiguous Lack of Jurisdiction

{¶ 17} In his petition for a writ of prohibition, Feltner alleged that the BOR patently and unambiguously lacked jurisdiction because R.C. 323.65 et seq., which gives a board of revision the ability to adjudicate tax-foreclosure proceedings, violates the separation-of-powers doctrine and that a conflict of interest created by the interplay between the statutory scheme and the Cuyahoga County Charter deprived him of due process.

{¶ 18} The lead opinion avoids the constitutional issues presented by Feltner by concluding simply that the BOR did not patently and unambiguously lack jurisdiction to enter a judgment of foreclosure on the real property owned by Feltner because the statutory scheme, which provided the BOR with the ability to adjudicate a tax foreclosure, had not been held unconstitutional by existing precedent at the time that the BOR held its hearing. I agree with the other opinion

concurring in judgment only to the extent that the reasoning in the lead opinion is circular: this court's consideration of the issue is informed by the Ohio Constitution, and a lack of jurisprudence on an issue should not bar this court from determining matters related to another branch of government's alleged use of judicial power, which is reserved to the courts under Article IV, Section 1 of the Ohio Constitution. *See State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 467, 715 N.E.2d 1062 (1999) (the court must "jealously guard the judicial power against encroachment from the other two branches of government").

{¶ 19} Therefore, I believe that the constitutional issues in this case cannot and should not be avoided. I believe that this court should address Feltner's claims that the BOR patently and unambiguously lacked jurisdiction based on a violation of the separation-of-powers doctrine and his due-process rights.

*A. Separation of Powers*

{¶ 20} The separation-of-powers doctrine is implicitly embedded in the Ohio Constitution. *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 159, 503 N.E.2d 136 (1986). And all judicial power is conferred on the courts of this state pursuant to Article IV, Section 1 of the Ohio Constitution.

{¶ 21} The Ohio Constitution prohibits the General Assembly from encroaching upon the courts' judicial power. Article II, Section 32, Ohio Constitution; *see Ohio Academy of Trial Lawyers*, 86 Ohio St.3d at 467, 715 N.E.2d 1062. The General Assembly cannot confer upon tribunals, other than courts, powers that are strictly and conclusively judicial. *Fassig v. State ex rel. Turner*, 95 Ohio St. 232, 116 N.E. 104 (1917), paragraph one of the syllabus, *overruled in part on other grounds by Griffin v. Hydra-Matic Div., Gen. Motors Corp.*, 39 Ohio St.3d 79, 529 N.E.2d 436 (1988).

{¶ 22} To facilitate the collection of taxes, the General Assembly has empowered boards of revision to foreclose on certain tax-delinquent properties and to order direct transfers to qualified parties, in this case, the Cuyahoga County Land

Reutilization Corporation ("Land Bank"). *See* R.C. 323.66(A) and 323.78. The issue that we must resolve is whether the adjudication of tax foreclosures is *strictly* and *conclusively* an exercise of judicial power.

{¶ 23} There is no exact rule for determining what powers may or may not be assigned by law to each branch of government. *State ex rel. Atty. Gen. v. Harmon*, 31 Ohio St. 250, 258 (1877). In order to determine what constitutes judicial power within the meaning of our Constitution, we look to the common law and the history of our institutions as they existed before and at the time of the adoption of our Constitution. *Id.*

{¶ 24} The courts of this state have always held the power to adjudicate matters in equity, like foreclosures. *See St. Clair v. Morris*, 9 Ohio 15, 17 (1839). However, the power to tax is reserved for the legislative branch. *Bank of Toledo v. Toledo*, 1 Ohio St. 622, 701 (1853) (the right of taxation is a branch of the legislative authority); *see also Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 281, 15 L.Ed. 372 (1856), and *Musser v. Adair*, 55 Ohio St. 466, 45 N.E. 903 (1896) (citing *Murray's Lessee* favorably). Thus, the statutory scheme at issue creates a unique intersection of judicial and legislative power. Because of this unique intersection of power, it is difficult to determine that the adjudication of tax foreclosures is strictly and conclusively an exercise of judicial power.

{¶ 25} Therefore, Feltner has not clearly and convincingly established that the BOR patently and unambiguously lacked jurisdiction to adjudicate the tax foreclosure based simply on the separation-of-powers issue.

*B. Due Process*

{¶ 26} Feltner also raised a due-process claim in arguing that the BOR patently and unambiguously lacked jurisdiction to adjudicate the foreclosure of his property. He contends that many of the individuals who participated in this tax foreclosure and the transfer of his property to the Land Bank had aligned interests: (1) the county treasurer prosecuted the action under R.C. 323.25, and because the

county executive appointed the treasurer, their interests are aligned, (2) the county executive and county fiscal officer sit on the BOR, and because the county executive appointed the fiscal officer, their interests are aligned, (3) the county treasurer invoked the alternative right-of-redemption period under R.C. 323.78, thus allowing for a direct transfer of the property to the Land Bank, and (4) because the county executive and county treasurer are on the Land Bank's board, they have an interest in prosecuting and deciding tax-foreclosure cases that result in direct transfers to the Land Bank. Feltner maintains that because the prosecutor's, the adjudicative body's, and the beneficiary of the adjudication's interests in his property overlapped, his due-process rights were violated.

{¶ 27} I agree with Feltner that the interplay between the Cuyahoga County Charter and the statutory scheme at issue presents a troubling scenario. The similar interests of the state, the BOR, and the Land Bank—prosecutor, judge, and beneficiary—may create an appearance of impropriety and partiality. Such an appearance could cause the public to lose confidence in the integrity of this adjudicative process, regardless of whether all procedures were followed by the parties involved. The appearance of impropriety and partiality is always a concern of the judiciary when we decide cases, *see* Jud.Cond.R. 1.2 and 2.2, and I do not see why it would not also be a concern for a board of revision in a quasi-judicial proceeding. It is difficult to imagine how Ohioans can have due process of law in tax-foreclosure proceedings when there is even a slight question of impropriety or partiality due to a conflict of interest created by the interplay between the statutory scheme and a county charter.

{¶ 28} But while I am sympathetic to Feltner's situation, this possible conflict of interest does not demonstrate that the BOR patently and unambiguously lacked jurisdiction to adjudicate the tax foreclosure. Rather, Feltner raises a due-process claim that comes too late, a claim that could have been and should have been addressed—if he had requested to have the proceeding transferred "to a court of

competent jurisdiction to be conducted in accordance with the applicable laws," R.C. 323.69(B)(2). *See also* R.C. 323.691(A)(1) and 323.70(B). Therefore, I would conclude that Feltner has not demonstrated by clear and convincing evidence that the BOR patently and unambiguously lacked jurisdiction based upon a possible conflict-of-interest issue. But I would reiterate that this is likely an issue that needs to be reviewed further by the General Assembly or Cuyahoga County so that Ohioans have full confidence in the fundamental fairness of these foreclosure proceedings.

## II. Dismissal of Unauthorized-Taking Counts

{¶ 29} This court has previously dismissed counts V and VI of Feltner's complaint, both of which raised issues related to an unauthorized taking of property by the government. *See Feltner*, 155 Ohio St.3d 1403, 2019-Ohio-943, 119 N.E.3d 431. However, I would have granted an alternative writ on those counts and ordered briefing. *Id.*

{¶ 30} I did not write a dissenting opinion to the order dismissing these claims, but on further review, it has become apparent that the dismissal of those claims is exceedingly bothersome. There is no doubt that the facts alleged by Feltner in this case are disconcerting, especially in light of the fact that his allegations in counts V and VI had to be taken as true. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418, 650 N.E.2d 863 (1995) (when reviewing a motion to dismiss, all material allegations in the complaint must be construed as true). While I express no opinion on the merits of Feltner's takings claims, after reviewing the record and the parties' briefs, I wonder if the claims would have had merit.

{¶ 31} I recognize that there were arguably some procedural issues with Feltner's takings claims, such as whether Feltner had properly asserted a claim in mandamus. But I would have welcomed briefing on the issue, because I am bothered by the possibility that the BOR foreclosed on Feltner's property, which was worth around $144,500 and on which he owed $65,189.94 in taxes, and then transferred that property to the Land Bank, all without providing him notice of the final judgment

and without remitting the remaining value of the property to Feltner. Indeed, Feltner claims that the property was not sold but was merely transferred to a third party after the Land Bank received the deed to the property. The whole scheme is unsettling and just seems wrong. Thus, although I previously voted to grant an alternative writ in regard to counts V and VI, after reviewing the evidence and the briefs that have now been submitted, I renew my objection to this court's failure to address those claims. I believe that the court should have granted an alternative writ in regard to those counts, if only to have peace of mind that Feltner received some due process and that the government did not receive a windfall at Feltner's expense.

### III. Conclusion

{¶ 32} Because Feltner has not demonstrated that the BOR patently and unambiguously lacked jurisdiction to adjudicate his tax foreclosure, and because he had an adequate remedy at law, I concur in the judgment denying his petition for a writ of prohibition. To fully adjudicate the issues before this court, I believe that an alternative writ should have been granted in regard to counts V and VI of Feltner's complaint. I encourage the General Assembly and Cuyahoga County to evaluate this process to ensure transparent and impartial proceedings, because the right to private property is an original right and is one of the primary and most sacred objects of the government to secure and protect, *see Bank of Toledo*, 1 Ohio St. at 632. Therefore, I respectfully concur in judgment only.

O'CONNOR, C.J., concurs in the foregoing opinion.

———————————

**DEWINE, J., concurring in judgment only.**

{¶ 33} The lead opinion would deny the writ on the ground that the Cuyahoga County Board of Revision did not patently and unambiguously lack jurisdiction. It reaches this conclusion because there was clear statutory authority for the board's actions and none of our prior case law had established that the statutory grant of authority was unconstitutional. It thereby avoids addressing the

constitutional challenges Feltner raises to the board's actions in this case. As I explain, I do not agree that we can avoid the constitutional issues. But because I do not believe that Feltner's constitutional challenges have any merit, I concur in the judgment denying the writ.

{¶ 34} The lead opinion rightly notes that for us to undo the board's actions through a writ of prohibition, Feltner must establish that the board patently and unambiguously lacked jurisdiction over the tax-foreclosure proceedings. And the lead opinion also rightly emphasizes that we normally do not address constitutional questions in extraordinary writ actions when there is a remedy at law—that is, when those questions could have been addressed through the normal process in the courts of common pleas or the courts of appeals. *See State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶ 22.

{¶ 35} But in this case, Feltner brings a separation-of-powers claim, arguing that the statute that ostensibly gives the board power over the foreclosure proceeding unconstitutionally usurps a judicial function. Unlike many other kinds of constitutional claims, a separation-of-powers claim goes to the basic authority of a government entity. Feltner is not arguing simply that the legislature enacted a statute that exceeded its authority but rather that the tribunal that heard his case lacked the authority to act. Thus, the challenge he brings is akin to those we typically consider in original writ actions when we determine if there is a patent and unambiguous lack of jurisdiction.

{¶ 36} Thus, unlike the lead opinion, I would proceed to the next question: is Feltner right? Did the tribunal that decided his case lack the authority to act? Do the authorizing statutes unconstitutionally usurp judicial functions? The lead opinion sensibly notes that to assess whether a tribunal patently and unambiguously lacks jurisdiction, we must look to then-existing law—that is, the law at the time that the tribunal acted. One would think that this would require an examination of the statutes and constitutional provisions in effect at the time of a tribunal's

decision. But instead the lead opinion says what really matters is whether there is any *precedent* establishing that a tribunal's action is unconstitutional. Indeed, the lead opinion suggests that "a court may consider only whether the authorizing statute was clearly unconstitutional under precedent existing at the time of the lower tribunal's judgment in determining whether the lower tribunal patently and unambiguously lacked jurisdiction." Lead opinion at ¶ 13. This reasoning turns the judicial role on its head. Whether a tribunal lacks jurisdiction under the Ohio Constitution hinges not on what this court has said but on what the Constitution requires. We are subservient to the Constitution. It is not subservient to us. I therefore do not think that Feltner's constitutional challenges can be avoided in the way that the lead opinion proposes. In order to assess whether there is a patent and unambiguous lack of jurisdiction, we must address Feltner's separation-of-powers arguments.

{¶ 37} Feltner's arguments come in two varieties. The first seeks to establish that the statute violates the separation-of-powers doctrine because it involves an improper consolidation of executive and judicial functions in the board. This argument fails because the statutory scheme allows independent judicial assessment by transferring the case to a court prior to an administrative hearing under R.C. 323.70(B) or by de novo appeal to the court of common pleas under R.C. 323.79. We have held that the availability of an appeal to a court is sufficient to avoid an unconstitutional consolidation of powers. *See Stanton v. State Tax Comm.*, 114 Ohio St. 658, 664, 681-682, 151 N.E. 760 (1926). Independent de novo review by the judiciary means that governmental powers are not functionally consolidated in one branch of government or in one entity.[2]

---

2. Feltner protests that he was never notified of the board's decision and that this deprived him of his right to appeal. Whether or not that argument is sound, it doesn't bear on the jurisdiction of the board, and hence, cannot be used to support Feltner's claim for a writ of prohibition.

{¶ 38} The second line of argument is not so much concerned with the consolidation of multiple functions as with the usurpation of the judicial function by an executive agency. On this line of reasoning, the objection is that the board is doing a kind of activity—adjudication—that it cannot constitutionally do. This argument faces an uphill climb since it has never been the case that judicial, executive, and legislative functions are cleanly separated in our constitutional scheme. *See Fairview v. Giffee,* 73 Ohio St. 183, 186, 76 N.E. 865 (1905). And there are a host of constitutionally permissible activities performed by executive units that are quasi-judicial in nature. *See, e.g., State ex rel. Stewart v. Clinton Cty. Bd. of Elections*, 124 Ohio St.3d 584, 2010-Ohio-1176, 925 N.E.2d 601, ¶ 16. So, one cannot argue that an activity is judicial and hence improperly exercised by the executive branch merely by pointing out that the executive activity has some of the characteristics that are paradigmatic of judicial activity—taking evidence, hearing claims and arguments, etc. *See Fassig v. State ex rel. Turner*, 95 Ohio St. 232, 116 N.E. 104 (1917), paragraph two of syllabus. Rather, Feltner must show that the specific type of quasi-judicial proceeding at issue here may not be conducted by the executive branch.

{¶ 39} Does the Constitution prohibit the administrative handling of a tax proceeding like this one? As a general rule, the Constitution is to be "interpreted with reference to the usages and customs * * * at the time of its adoption." *De Camp v. Archibald*, 50 Ohio St. 618, 625, 35 N.E. 1056 (1893). As noted above, there are no clean conceptual boundaries to draw around the kinds of activities that are exclusively judicial, executive, or legislative. Thus, in separation-of-powers cases, it is especially important to look to historical practice. *See Zivotofsky v. Kerry*, 576 U.S. ___, 135 S.Ct. 2076, 2091, 192 L.Ed.2d 83 (2015). The problem for Feltner is that when the Ohio Constitution was adopted in the middle part of the 19th century, tax-levy and foreclosure matters were handled by the executive branch. An 1856 case makes this point clear. *Murray's Lessee v. Hoboken Land &*

*Improvement Co.*, 59 U.S. 272, 282, 15 L.Ed. 372 (1856). As the United States Supreme Court explained, tax recovery from tax debtors could proceed through a summary-administrative process. This is because "there are few governments which do or can permit their claims for public taxes, either on the citizen or the officer employed for their collection or disbursement, to become subjects of judicial controversy." *Id.*; *see also* Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum.L.Rev. 559, 589-590 (2007) (noting that the "traditional power of taxation enabled the government to take authoritative actions adverse to core private rights without any 'judicial' involvement").

{¶ 40} Similarly, the Supreme Court rejected the argument that the levy and sale of property to secure payment of a tax debt violated due-process protections because it was done through an administrative process. *Springer v. United States*, 102 U.S. 586, 592-594, 26 L.Ed. 253 (1880). The court reasoned that with regard to tax proceedings, "[t]he idea that every tax-payer is entitled to the delays of litigation is unreason. If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make congresses, to see that the evil was corrected." *Id.* at 594. And around the same time, this court observed that

> [t]he people of this country, in their colonial and subsequent history, have always collected taxes through the agency of administrative officers. The courts have remained open to those who could show that they had been aggrieved; but, that the state should resort to the courts for the purpose of making collections * * * has not been allowed * * *.

*Adler v. Whitbeck*, 44 Ohio St. 539, 570, 9 N.E. 672 (1887).

**{¶ 41}** The statutory scheme for tax collection in the middle part of the 19th century also supports the conclusion that tax proceedings like this one could permissibly be given over to executive authorities. In an 1832 case, this court explained the statutory process for a land sale associated with a tax lien. *Carlisle's Lessee v. Longworth*, 5 Ohio 368, 371-373 (1832), citing 23 Ohio Laws 89. That procedure included the following steps: (1) the tax collector would give the county auditor a list of delinquent taxpayers and certify under oath as to its veracity, (2) the county auditor would make a list of all lands noted as delinquent and would impose a penalty and publish the tax bill plus interest and penalty, (3) the auditor would then record and certify the publication, (4) the county collector would then hold a sale of the lands mentioned in the advertisement and still delinquent. *Id.* In short, it was a procedure that occurred outside the courts.

**{¶ 42}** The upshot of all of this is that as a matter of historical practice, tax assessment was handled by the executive branch of government and did not require judicial involvement. The result is that there cannot be a separation-of-powers problem with the administrative process at issue here. For that reason, Feltner has not shown that the board lacks jurisdiction over this matter. I therefore concur only in the judgment denying the writ.

———————————

The Dann Law Firm Co., L.P.A., Marc E. Dann, Whitney Kaster, and Brian D. Flick; and Andrew M. Engel Co., L.P.A., and Andrew M. Engel, for relator.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Charles E. Hannan and Adam Jutte, Assistant Prosecuting Attorneys, for respondents.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, and Michael J. Hendershot, Chief Deputy Solicitor, urging denial of the writ for amicus curiae Ohio Attorney General.

Roetzel & Andress, L.P.A., and Stephen W. Funk, urging denial of the writ for amici curiae Cuyahoga County Land Reutilization Corporation and Ohio Land Bank Association.

Julia R. Bates, Lucas County Prosecuting Attorney, and Suzanne Cotner Mandros, Assistant Prosecuting Attorney, urging denial of the writ for amicus curiae Ohio Prosecuting Attorneys Association.

Herman Law, L.L.C., and Edward F. Herman, urging denial of the writ for amicus curiae County Treasurers Association of Ohio.

Frances Shaiman Lesser; and Pappas & Associates and Thomas P. Pappas, urging denial of the writ for amicus curiae County Auditors' Association of Ohio.

_____