[Cite as *Rock City Church v. Franklin Cty. Bd. of Revision*, 2023-Ohio-1339.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rock City Church, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 22AP-372<br>(BTA No. 2021-1045) |
| Franklin County Board of Revision, | : | |
| Appellee-Appellee. | : | (REGULAR CALENDAR) |

---

D E C I S I O N

Rendered on April 25, 2023

---

**On brief:** *Mallory Law Office, LLC*, and *Thomas H. Mallory, Jr.*, for appellant. **Argued:** *Thomas H. Mallory, Jr.*

---

Ohio Board of Tax Appeals

DORRIAN, J.

{¶ 1} Appellant, Rock City Church ("Rock City"), appeals from a decision of the Ohio Board of Tax Appeals ("BTA") affirming a decision of appellee, the Franklin County Board of Revision ("BOR"), dismissing as untimely Rock City's complaint regarding a current agricultural-use valuation ("CAUV") recoupment charge imposed on its real property. Because we conclude the statutory requirement that Rock City's complaint be filed by March 31, 2020 was not tolled by emergency legislation enacted in response to the COVID-19 pandemic, we affirm.

**I. Facts and Procedural History**

{¶ 2} Rock City owns real property located at 4311 Anson Drive in Hilliard, Ohio. Rock City asserts it acquired the property in 2016 and that the property qualified for CAUV

status at the time based on agricultural use.[1]  Rock City further asserts it obtained a tax exemption, retroactive to January 1, 2017, based on use of the property for church purposes. Rock City did not seek CAUV status for the property for 2017.  Rock City asserts a CAUV recoupment charge of $207,280.70 was imposed on the property effective January 1, 2017, and that it paid the charge.[2]

---

[1] The Supreme Court of Ohio has provided this summary of CAUV status:

> Typically, real property is valued by the county auditor at its "true value in money," R.C. 5713.01(B), which "refers to 'the amount for which that property would sell on the open market by a willing seller to a willing buyer * * *, *i.e.*, the sales price' " (ellipsis sic), *Terraza 8, L.L.C. v. Franklin Cty. Bd of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 9, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964).

> In 1974, however, the General Assembly enacted the CAUV statute, R.C. 5713.30 et seq., which permits owners of land that is devoted exclusively to agricultural use to request the auditor to value the property in accordance with its current agricultural use rather than its true market value. *Maralgate, L.L.C. v. Green Cty. Bd. of Revision*, 130 Ohio St.3d 316, 2011-Ohio-5448, 958 N.E.2d 153, ¶ 13-14; *see also Adams v. Testa*, 152 Ohio St.3d 207, 2017-Ohio-8853, 94 N.E.3d 539, ¶ 6 ("agricultural land" includes "land upon which timber is grown that is part of or next to farmland"), citing R.C. 5713.30.

> CAUV is a preferred tax status because, in general, a value determined by agricultural use is lower than a property's true market value and therefore, CAUV status typically results in a lower real-property-tax liability. *Renner v. Tuscarawas Cty. Bd. of Revision*, 59 Ohio St.3d 142, 572 N.E.2d 56 (1991). Land must qualify to be valued according to its agricultural use, and if a CAUV parcel, or any portion thereof, is converted to another use or no longer satisfies the CAUV requirements, it is removed from CAUV status and returned to the tax rolls to be assessed at its true market value, and the county recoups the prior three years of the tax savings realized by the taxpayer.  R.C. 5713.34.

*Johnson v. Clark Cty. Bd. of Revision*, 155 Ohio St.3d 264, 2018-Ohio-4390, ¶ 10-12.

[2] Under R.C. 5713.34(A)(1), "[u]pon the conversion of all or any portion of a tract, lot, or parcel of land devoted exclusively to agricultural use a portion of the tax savings upon such converted land shall be recouped as provided for by Section 36, Article II, Ohio Constitution by levying a charge on such land in an amount equal to the amount of the tax savings on the converted land during the three tax years immediately preceding the year in which the conversion occurs." R.C. 5713.35 provides that the county auditor shall determine if there has been a conversion of land devoted exclusively to agricultural use and, upon determining that there has been a conversion, determine the amount of the charge levied under R.C. 5713.34 and place that amount as a separate item on the tax list to be collected by the county treasurer in the same manner and at the same time as real property taxes levied for the current calendar year.

{¶ 3} On July 31, 2020, Rock City filed a complaint with the BOR, asserting the property was tax exempt and requesting reimbursement of the CAUV recoupment charge. On June 15, 2021, the BOR notified Rock City the complaint had been dismissed "for filing outside of the filing season." (June 15, 2021 BOR Letter.) Rock City appealed to the BTA, arguing that Am.Sub.H.B. No. 197 ("H.B. 197"), enacted in March 2020, tolled the time for filing its complaint. Rock City claimed the BOR erred by dismissing its complaint without considering the effect of H.B. 197. The BTA affirmed the BOR's decision, concluding it was reasonable and lawful because H.B. 197 did not toll the statutory time for filing a complaint.

## II. Assignments of Error

{¶ 4} Rock City appeals and assigns the following two assignments of error for our review:

> [I.] The BTA errored [sic] when it dismissed the Complaint as untimely under H.B. 197.
>
> [II.] The Dismissal is Moot Because Rock City's Property is Tax Exempt.

## III. Analysis

### A. Standard of review

{¶ 5} We review a BTA decision to determine if it is reasonable and lawful; if it is both, we must affirm. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 21AP-86, 2022-Ohio-355, ¶ 15. However, we review questions of law de novo. *Id.* at ¶ 17. Accordingly, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion' " *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, ¶ 26, quoting *Bd. of Edn. of Gahanna-Jefferson Local School Dist. v. Zaino, Tax Commr.*, 93 Ohio St.3d 231, 232 (2001). Statutory interpretation is a question of law that we review de novo. *Thomas v. Logue, Admr. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 21AP-385, 2022-Ohio-1603, ¶ 12.

### B. Whether H.B. 197 tolled the time for filing Rock City's complaint

{¶ 6} In its first assignment of error, Rock City argues the BOR and BTA erred by concluding its complaint was untimely. Rock City asserts that H.B. 197 tolled the statutory time for filing its complaint.

{¶ 7}   R.C. 5715.19(A)(1) requires that a complaint against certain property-tax-related determinations "shall be filed with the county auditor on or before the thirty-first day of March of the ensuing tax year or the date of closing of the collection for the first half of real and public utility property taxes for the current tax year, whichever is later."  A complaint against a recoupment charge levied under R.C. 5713.35 is subject to this filing requirement.  R.C. 5715.19(A)(1)(c).  Rock City does not appear to dispute that, under normal circumstances, its complaint would have been due by March 31, 2020.[3]  In March 2020, however, the circumstances were not normal.  That month, in response to the emerging COVID-19 pandemic, the General Assembly enacted H.B. 197.  Among other measures, Section 22 of H.B. 197 tolled certain statutes of limitations and time requirements set to expire between March 9 and July 30, 2020.[4]

{¶ 8}   As relevant to this appeal, Section 22(A)(10) of H.B. 197 contained a catch-all provision tolling "[a]ny other criminal, civil, or administrative time limitation or deadline under the Revised Code" set to expire between March 9 and July 30, 2020.  After passage by the General Assembly, H.B. 197 was sent to Governor DeWine, who exercised a line-item veto deleting the words "or deadline" from Section 22(A)(10) before signing the bill.  As modified by the line-item veto, Section 22(A)(10) states that "[a]ny other criminal, civil, or administrative time limitation under the Revised Code" set to expire between March 9 and July 30, 2020, was tolled.  The General Assembly did not override the line-item veto and H.B. 197, as modified by the governor, went into effect on March 27, 2020.

{¶ 9}   In the present case, on appeal from the BOR's dismissal, the BTA concluded that Section 22(A)(10) did not toll the March 31st filing requirement under R.C. 5715.19(A)(1) because that requirement was not a criminal, civil, or administrative time limitation.  Reviewing the BTA's decision requires us to interpret and apply Section 22(A)(10).

---

[3] Rock City's brief on appeal refers to the March 31st filing requirement and does not appear to argue that the second potential filing date, i.e., "the date of closing of the collection for the first half of real and public utility property taxes for the current tax year," applied to its complaint.  R.C. 5715.19(A)(1). Accordingly, for purposes of this appeal we will focus on the March 31st filing requirement.

[4] Section 22 was an uncodified portion of H.B. 197. "Uncodified law * * * does not receive an Ohio Revised Code section number, because it is not of a general and permanent nature—nevertheless, it is binding law." *State ex rel. St. Clair Twp. Bd. of Trustees v. Hamilton*, 156 Ohio St.3d 272, 2019-Ohio-717, ¶ 18.

{¶ 10} "When construing the language of a statute, a court must 'ascertain and give effect to the intention of the General Assembly.' " *Meyers v. Hadsell Chem. Processing, L.L.C.*, 10th Dist. No. 18AP-387, 2019-Ohio-2982, ¶ 32, quoting *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, ¶ 24. When a statute is unambiguous and definite, it must be applied as written and no further interpretation is required. *Thomas* at ¶ 11. If a statute is ambiguous, then in determining legislative intent we may consider factors such as the circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction. R.C. 1.49.

{¶ 11} Rock City argues Section 22(A)(10) of H.B. 197 was ambiguous due to the General Assembly's use of the terms "time limitation" and "deadline," which are not defined within H.B. 197. Rock City further argues that, because of this ambiguity, we may consider the governor's veto message to interpret his intent in deleting the phrase "or deadline" from H.B. 197.

{¶ 12} With respect to ambiguity, we note that the version of Section 22(A)(10) that became law did not contain the term "deadline" because it had been removed through the line-item veto. Ultimately, the question before us is whether the March 31st filing requirement under R.C. 5715.19(A)(1) is a "time limitation" that would be tolled by Section 22(A)(10).[5] The Second District Court of Appeals also considered this issue in *Northridge Local Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2d Dist. No. 29179, 2022-Ohio-495 ("*Dayton Fun Hotels*"), and we find that decision to be instructive.

{¶ 13} In *Dayton Fun Hotels*, the Second District found the distinction between a "statute of limitations," a "time limitation," and a "deadline" to be pivotal in resolving the question of whether Section 22 tolled the filing requirement under R.C. 5715.19(A). *Dayton Fun Hotels* at ¶ 16. Citing *Black's Law Dictionary*, the Second District concluded that a

---

[5] The Supreme Court has held that Section 22(A)(10) of H.B. 197 would toll the 60-day period for filing an *appeal* to the BTA. *Chapman Ents., Inc. v. McClain*, 165 Ohio St.3d 428, 2021-Ohio-2386, ¶ 13. In *Chapman*, the court concluded that "the 60-day period for filing an appeal with the BTA is functionally the same as a 60-day limitation period for initiating an administrative proceeding at the BTA." *Id*. The relevant statute in that case provides that a tax commissioner's final determination can be appealed to the BTA by filing a notice of appeal "within sixty days after service of the notice of the [final determination]." R.C. 5717.02(B). By contrast, R.C. 5715.19(A)(1) provides an annual date by which a complaint must be filed, rather than a period of time after a triggering event during which an appeal can be filed. Thus, *Chapman* is distinguishable from the present appeal.

"statute of limitations" was a law barring civil claims or criminal prosecution after a specified period of time. Similarly, the court concluded that "time limitation" refers to a period of time within which action must be taken. *Id.* By contrast, the court concluded that a "deadline" is the time by which something must be completed and found that the use of "deadline" in other portions of H.B. 197 were consistent with that meaning. *Id.* at ¶ 17, 19. Considering these definitions, the Second District concluded that the March 31st filing requirement under R.C. 5715.19(A)(1) was a deadline because it was "a specific date by which an action needed to be taken." *Id.* at ¶ 23. Because the term "deadline" had been deleted from Section 22(A)(10) through the line-item veto, the Second District held that Section 22(A)(10) did not toll the filing deadline imposed by R.C. 5715.19(A)(1). *Id.* at ¶ 24.

{¶ 14} Rock City argues the *Dayton Fun Hotels* decision was incorrect because the Second District did not consider the governor's veto message explaining his line-item veto of the term "deadline." In that message, Governor DeWine provided the following explanation for his line-item veto:

> This provision is intended to apply only to criminal statutes of limitations, civil statutes of limitations, administrative statutes of limitations and other statutorily created time limitations in court cases. Removing ["or deadline"] clarifies that this provision does not apply to statutory tax deadlines or due dates, including those tax deadlines or due dates adjusted elsewhere in this bill. The Tax Commissioner has the authority to individually extend tax deadlines and due dates based upon particularized situations. All other state agencies, boards and commissions will work with Ohio citizens in individual circumstances. This clarification, and maintaining revenue sources, such as the sales tax, which has already been collected by vendors but not yet remitted to the State and distributed to local governments, to fund essential government services, is imperative during the duration of the Governor's COVID-19 emergency declaration. Therefore, this veto is in the public interest.

State of Ohio Executive Department, Office of the Governor, Statement of the Reasons for the Veto of an Item in Am.Sub.H.B. 197 (Mar. 27, 2020).

{¶ 15} Rock City argues the veto message indicates the phrase "or deadline" was deleted to protect revenues from sales taxes and other similar taxes received by an entity

and regularly remitted to the government because those revenues were necessary to fund government services during the COVID-19 emergency period. Rock City argues the CAUV recoupment charge against its property was not within this same class of taxes and therefore was not intended to be protected by the line-item veto. We disagree with Rock City's interpretation of the veto message. Although the veto message referred to sales taxes as an example of the types of revenue sought to be protected, it did not state that only deadlines related to those types of revenues were exempt from tolling. Moreover, the effect of Rock City's interpretation would be that by deleting the word "deadline," the governor intended to preserve some deadlines while permitting others to be tolled.

{¶ 16} We agree with the Second District's reasoning in *Dayton Fun Hotels*. As explained above, the terms "time limitation" and "deadline" have different meanings. Treating those terms as synonymous would render the line-item veto meaningless and would run contrary to the presumption that we must give effect to all parts of a statute. *See Dayton Fun Hotels* at ¶ 18. As enacted into law, Section 22(A)(10) only tolled "time limitations." We conclude that the March 31st filing requirement under R.C. 5715.19(A)(1) is more properly characterized as a deadline rather than a time limitation, because the statute provides a specific date by which action must be taken. Because it is not a time limitation, the March 31st filing requirement was not tolled by Section 22(A)(10) of H.B. 197 and the BTA did not err by affirming the BOR's dismissal of Rock City's complaint as untimely filed.

{¶ 17} Accordingly, we overrule Rock City's first assignment of error.

## C. Rock City's tax-exemption argument

{¶ 18} In its second assignment of error, Rock City asserts the BOR's dismissal of its complaint is moot because the property is tax-exempt under R.C. 5709.07 due to use for public worship. Rock City did not assert this argument in its appeal to the BTA; therefore, the argument has been waived and we will not consider it for the first time on appeal. *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 549, 2015-Ohio-4837, ¶ 12-15. *See also Kinnear Rd. Redevelopment, L.L.C. v. Testa, Tax Commr.*, 151 Ohio St.3d 540, 2017-Ohio-8816, ¶ 30, 36-37 (holding tax commissioner waived certain arguments by failing to raise them before the BTA); *RNG Properties, Ltd. v.*

*Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, ¶ 33 (holding that omission of an argument from a party's brief before the BTA may be deemed to waive the argument); *Bd. of Edn. of the South-Western City Schools v. Kinney, Tax Commr.*, 24 Ohio St.3d 184, 185 (1986) ("As a general rule, this court will not consider matters which were not presented to the Board of Tax Appeals.").

{¶ 19} Accordingly, we overrule Rock City's second assignment of error.

**IV. Conclusion**

{¶ 20}  For the foregoing reasons, we overrule Rock City's two assignments of error and affirm the decision of the Ohio Board of Tax Appeals.

*Judgment affirmed.*

MENTEL, J., concurs.
JAMISON, J., concurs in part and dissents in part.

JAMISON, J., concurring in part and dissenting in part.

{¶ 21} I concur in the majority opinion overruling the second assignment of error. However, because I disagree with the majority in overruling appellant's first assignment of error, I respectfully concur in part and dissent in part.

{¶ 22} Am.Sub.H.B. No. 197 ("H.B. 197"), Section 22, provides in relevant part:

> (A) The following that are set to expire between March 9, 2020, and July 30, 2020, shall be tolled:
>
> * * *
>
> (c) For any administrative action or proceeding, the period of limitation for the action or proceeding as provided under the Revised Code or the Administrative Code, if applicable.
>
> * * *
>
> (10) Any other criminal, civil, or administrative time limitation *or deadline* under the Revised Code.

(Emphasis added.)

{¶ 23} The dispute in this case revolves around the governor's intent when he struck "deadline" from the proposed legislation. *Black's Law Dictionary* defines a "deadline" as "[a] cutoff date for taking some action." *Black's Law Dictionary* 500 (11th

Ed.2019). "Time limit" is defined as "[a] prescribed period by the end of which some task must be completed." *Black's* at 1786. It is worth noting that the definition of "deadline" in *Black's* is not attributed to any source. This omission begs the question whether the term has any legal meaning. Nevertheless, the primary difference between the two terms appears to be a "time limit" is a specific period of time, such as 30 days or 60 days, whereas a "deadline" is a specific date in time, such as March 31, 2020.

{¶ 24} I am inclined to agree with the majority opinion that there is a subtle difference in meaning between these two terms. I also agree that the statutorily created timeline in this case is more accurately described as a deadline because it is a specific date in time rather than a time period. However, in light of the governor's statement, I am convinced that this subtle distinction makes no difference in this case.

{¶ 25} The majority opinion frames the question in this case as whether the March 31, 2020 filing requirement is a "deadline" or a "time limitation"?  In my opinion, the question in this case is what meaning did the governor attach to the phrase "or deadline" when he struck it from H.B. 197?

{¶ 26}  Fortunately, the Governor DeWine's statement provides the answer to that question. The statement provides in relevant part as follows:

> This provision is intended to apply only to criminal statutes of limitations, civil statutes of limitations, administrative statutes of limitations and other statutorily created time limitations in court cases. *Removing* ["*or deadline"*] *clarifies that this provision does not apply to statutory tax deadlines or due dates, including those tax deadlines or due dates adjusted elsewhere in this bill. The Tax Commissioner has the authority to individually extend tax deadlines and due dates based upon particularized situations.* All other state agencies, boards and commissions will work with Ohio citizens in individual circumstances. This clarification, and maintaining revenue sources, such as the sales tax, which has already been collected by vendors but not yet remitted to the State and distributed to local governments, to fund essential government services, is imperative during the duration of the Governor's COVID-19 emergency declaration. Therefore, this veto is in the public interest.

(Emphasis added.) State of Ohio Executive Department, Office of the Governor, Statement of the Reasons for the Veto of an Item in H.B. 197 (Mar. 27, 2020).

{¶ 27} Based on the two emphasized sentences, the meaning the governor attributes to "deadline" is patently clear. The governor opposes language in the bill that could be misconstrued as an enlargement or extension of the time in which certain tax forms must be filed and taxes paid. In other words, the intention of the governor's veto was to ensure that revenue continues to roll in during the public emergency necessitates the enlarged or extended of other statutorily created timelines. The majority opinion acknowledges that the governor's statement was not considered by the Second District Court of Appeals in *Dayton Fun Hotels*.

{¶ 28} Moreover, the second sentence of the highlighted language establishes that the governor could not have been referring to the R.C. 5715.19(A) deadline for filing a complaint against value when he struck "or deadline" from the proposed legislation. The governor explained that he struck "or deadline" because "[t]he Tax Commissioner has the authority to individually extend tax deadlines and due dates based upon particularized situations." Statement of the Reasons for the Veto. In other words, the governor recognized the pandemic did not warrant a blanket legislative extension of all tax-related deadlines because the Tax Commissioner has the statutory authority to extend certain of those deadlines on an individual basis.

{¶ 29} Here, however, we are considering a statutory deadline for filing an original taxpayer complaint against value under R.C. 5715.19(A). The complaint is the statutory mechanism by which a taxpayer invokes BOR jurisdiction of a claim for recoupment. *See Toledo Pub. Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision*, 124 Ohio St.3d 490, 2010-Ohio-253, ¶ 10 ("It is now well settled that the language of R.C. 5715.19(A) establishes the jurisdictional gateway to obtaining review by the boards of revision."); *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 137 Ohio St.3d 266, 2013-Ohio-4627, ¶ 25, quoting *Toledo Pub. Schools* at ¶ 10 (" 'A complaint filed by a person who is not identified by [R.C. 5715.19(A)] as one who may file a complaint does not vest jurisdiction in the board of revision to review the auditor's valuation.' "); *Corex Partners L.L.C. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-322, 2020-Ohio-

3865 (A taxpayer challenging the valuation of a property must file a timely complaint or continuing-complaint to invoke the BOR's jurisdiction to review that valuation.); *Greenway Ohio, Inc. v. Cuyahoga Cty. Bd. of Revision*, 155 Ohio St.3d 230, 2018-Ohio-4244 (BOR lacked jurisdiction over complaint against valuation because non-lawyers were not authorized to file on behalf of a property owner under R.C. 5715.19(A).).

{¶ 30} Because the statutory filing deadline is jurisdictional, neither the governor nor the Tax Commissioner has the authority to extend that deadline, as the jurisdictional limits of the BOR are fixed by the General Assembly. *State ex rel. Feltner v. Cuyahoga Cty. Bd. of Revision*, 160 Ohio St.3d 359, 2020-Ohio-3080, ¶ 9 ("[I]n prohibition cases involving statutorily created tribunals of limited jurisdiction, we ordinarily ask whether the General Assembly gave the tribunal authority to proceed in the matter at issue."); *Hess Ohio Devs., L.L.C. v. Belmont Cty. Bd. of Revision*, 7th Dist. No. 19 BE 0029, 2020-Ohio-4729, ¶ 18, quoting R.C. 5715.11 ("BOR, [is] a statutorily created board tasked with hearing 'complaints relating to the valuation or assessment of real property as the same appears upon the tax duplicate of the then current year.' "). That is why the governor could not have been referring to the time for filing an R.C. 5715.19(A) complaint when he struck "or deadline," and precisely the reason the General Assembly was required to act. The fact that the General Assembly did not override the veto, as noted by the majority opinion, proves only that the General Assembly agreed with the governor's interpretation of the phrase "or deadline." It does not otherwise establish a meaning of the term.

{¶ 31} It is also important to remember that an R.C. 5715.19(A) complaint against value triggers certain other time limitations in the statute including the time in which to file a counterclaim. R.C. 5715.19(B) provides in relevant part that a local "board [of education] shall file the counter-complaint within thirty days after the original complaint is filed, and any other person shall file the counter-complaint within thirty days after receiving the notice required under this division." If the inflexible and hyper-technical meaning of "or deadline" is adopted by this court, a good argument can be made that even though the filing date of an original complaint is exempt from tolling, the 30-day period for filing a counter-complaint is tolled by H.B. 197 because it is clearly a time limitation

and not a deadline. The same argument can be made under R.C. 5715.19(C), which provides in relevant part:

> Each board of revision shall notify any complainant and counter-complainant, and also the property owner, * * *, *not less than ten days prior to the hearing* * * * of record of the time and place the same will be heard, [and] [t]he board of revision shall hear and render its decision on an original complaint *within one hundred eighty days* after the last day such a complaint may be filed with the board under division (A)(1) of this section or, if a counter-complaint is filed, within *one hundred eighty days* after such filing. If the original complaint is filed by the legislative authority of a subdivision, the mayor of a municipal corporation with territory in the county, or a third party complainant, and if the board of revision has not rendered its decision on the complaint within one year after the date the complaint was filed, the board is without jurisdiction to hear, and shall dismiss, the complaint.

(Emphasis added.)

{¶ 32} The majority opinion rejected Rock City's argument in this case by stating: "Although the veto message referred to sales taxes as an example of the types of revenue sought to be protected, it did not state that only deadlines related to those types of revenues were exempt from tolling. Moreover, the effect of Rock City's interpretation would be that by deleting the word 'deadline,' the governor intended to preserve some deadlines while permitting others to be tolled." (Majority Opinion at ¶ 15.) The fact of the matter is that R.C. 5715.19 contains both deadlines and time limitations as those terms have been defined by the majority opinion. Common sense dictates that if timelines within a statutory cause of action are tolled, deadlines must also be tolled. Because the majority attaches a meaning to a term "deadline" that was clearly not intended by the governor's veto, the result is the filing deadline for the complaint against value is exempt from tolling, but other time limitations triggered by the complaint are tolled. This cannot be the intended result of the governor's veto.

{¶ 33} I do not perceive any benefit from requiring a complaint against value to go forward during the pandemic when other deadlines for filing civil and other

administrative complaints are tolled. The pandemic clearly impacted a taxpayer's ability to prosecute a complaint against value. It is also true that BOR's and BTA's ability to process such a complaint were also affected by the pandemic. Moreover, remittance of the full amount of the assessed tax is not a statutory requirement for recoupment. *See* R.C. 5715.19(D). Full payment in advance of the complaint is necessary, however, to avoid statutory interest and potential penalties if the assessed value exceeds the taxpayers estimate or payment. *See* R.C. 5715.19(E). There is no dispute that Rock City remitted the total amount of the assessment prior to filing the complaint against value. Thus, the concerns that prompted the governor's veto did not arise in this case. The filing of the R.C. 5715.19(A) complaint initiates litigation that ends in court action and the filing deadline for such a complaint should be tolled during the pandemic.

{¶ 34} A correct interpretation of the governor's statement is critical in this case as the consequences of misinterpreting the governor's veto are severe. Rock City has argued the assessment is completely erroneous due to its status as a tax-exempt place of public worship under R.C. 5709.07(A). If Rock City is correct, a question which was not resolved due to the dismissal, the state of Ohio has wrongfully collected and held more than $200,000 in church funds. In my view, the BTA decision in this case represents the very sort of government overreach the judicial branch is meant to check. Rock City is entitled to have its day in court.

{¶ 35} For the foregoing reasons, I would hold that H.B. 197 tolled the filing period and find that Rock City timely filed its complaint with BOR. Accordingly, I would sustain Rock City's first assignment of error, reverse the BTA's judgment and remand this matter to BOR for processing of Rock City's complaint. Because the majority opinion does not, I respectfully concur in part and dissent in part.

---