[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Andrews v. Lake Cty. Court of Common Pleas*, Slip Opinion No. 2022-Ohio-4189.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4189

THE STATE EX REL. ANDREWS, CLERK, *v*. LAKE COUNTY COURT OF COMMON PLEAS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Andrews v. Lake Cty. Court of Common Pleas*, Slip Opinion No. 2022-Ohio-4189.]

*Prohibition—Mandamus—Clerk of courts—Duties of office—Judges' journal entry did not merely direct clerk of courts in the performance of her duties but effectively prevented the clerk from performing her duties and thus functionally removed her from her elected office—Writs of prohibition and mandamus granted and writ of quo warranto denied as moot.*

(No. 2022-0409—Submitted October 4, 2022—Decided November 30, 2022.)

IN PROHIBITION, MANDAMUS, AND QUO WARRANTO.

_____

**Per Curiam.**

## I. INTRODUCTION

{¶ 1} This original action involves a dispute between relator, Lake County Clerk of Courts Faith Andrews, and respondents, the seven judges of the Lake County Court of Common Pleas.[1] The dispute began when Andrews resisted using clerk's office funds for the purchase of computer software to be used by the judges, but it now centers on Andrews's behavior within the clerk's office. Andrews's alleged conduct led the judges to issue a journal entry in May 2022 that, among other things, bans Andrews from entering the Lake County courthouse, where the clerk's office is located, except for one day a month.

{¶ 2} Andrews alleges that the judges are preventing her from carrying out her duties as an elected official and that they have "constructively removed" her from office. She seeks writs of prohibition, mandamus, or quo warranto to prevent the judges from interfering with her execution of her duties. The judges have moved to dismiss Andrews's amended complaint.

{¶ 3} Ohio law gives a common pleas court jurisdiction to remove a person from public office based on the person's alleged misconduct, provided that a sufficient number of qualified electors have signed a complaint and filed it in the court. *See* R.C. 3.08. Here, no evidence has been presented that such a complaint has been filed seeking to remove Andrews from office. Because the judges have effectively removed Andrews from her office without jurisdiction to do so, we deny their motion to dismiss. We issue a writ of prohibition vacating the judges' May 2022 journal entry and prohibiting the judges from imposing similar restrictions

---

1. The respondent judges are Judge Eugene A. Lucci, Judge Vincent A. Culotta, Judge John P. O'Donnell, Judge Patrick J. Condon, Judge Colleen A. Falkowski, Judge Karen Lawson, and Judge Mark J. Bartolotta. In addition to the judges, Andrews named as a respondent the Lake County Court of Common Pleas. Because a court is not sui juris and may not be sued in its own right, the court of common pleas is not a properly named party in this case. *See State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 165 Ohio St.3d 292, 2021-Ohio-2374, 178 N.E.3d 492, ¶ 26.

against Andrews without jurisdiction. We also issue a writ of mandamus ordering the judges to vacate the May 2022 entry. We deny as moot Andrews's request for a writ of quo warranto.

## II. BACKGROUND

{¶ 4} Andrews was elected as the Lake County clerk of courts in November 2020 and began a four-year term in that position in January 2021.

{¶ 5} Later in 2021, Andrews told the county budget director that she did not want to use funds designated for digitization of court records to help pay for computer software that would be used exclusively by the judges and their staffs. After learning of Andrews's position on the matter, the judges sent Andrews a letter signed by all of them, explaining how the software was connected to the digitization of court records and the clerk of courts' duty to maintain the records. The judges emphasized that the clerk of courts performs a ministerial function for the benefit of the court and said they would journalize an order to compel Andrews to provide the funding if she would not agree to do so.

{¶ 6} In November 2021, Judge Lucci, the court's administrative judge, emailed Andrews about the court's information technology ("IT") department, which at the time was funded and supervised jointly by the court and the clerk. Judge Lucci told Andrews that she "must comply with the terms" of a draft journal entry (hereafter, "the November entry"), which the judge had attached to the email, and which was not signed but included the names of Judges Lucci, Culotta, O'Donnell, Condon, and Falkowski. Judge Lucci emphasized that the entry was only a draft and had not been filed, but he told Andrews that if she did not comply, those judges would "sign the order, file it, and enforce it upon any further violation."

{¶ 7} The draft entry directed the clerk to continue to "pay one-half of the costs associated with the operation of the Court['s] IT department." It also stated

3

that Andrews had "engaged in conduct unbecoming of her office that undermines the mission of the court" by

> swearing in areas within earshot of the public and visitors to the court[;] expos[ing] her office to complaints, litigation, and other claims[;] risk[ing] voluntary resignation of employees under hostile conditions and involuntary termination without just cause[;] subject[ing] her employees to such a degree of anxiety where their work product, and thus, the maintenance of court files and papers, is degraded[;] and diminish[ing] public confidence in the courts, as well as the public image of and respect for the court.

The draft entry provided that the court's IT department would serve the court and the clerk's legal division, but not the clerk's title division. Further, it stated that the court's IT department "shall be under the sole and exclusive supervision and direction of the judges" and that the clerk "shall have no authority to supervise, interfere with, admonish, direct, hire, discipline, or terminate" any employee in the IT department. The draft entry stated that any violation of the order by the clerk would be considered contempt of court, punishable by a fine or incarceration.

{¶ 8} In early March 2022, Andrews requested a meeting with Judge Lucci to discuss her office's annual report. When Andrews arrived for the meeting on Friday, March 4, she was directed to Judge Lucci's courtroom, where the judge was sitting on the bench and the other judges had gathered. Andrews alleges that Judge Lucci criticized her and told her that her staff was "terrified" of her. She says that she was not given an opportunity to respond. At the meeting, she was given a letter and a journal entry, the latter of which had been signed by Judges Lucci, Culotta, O'Donnell, Condon, and Falkowski but had not been filed. According to Andrews, when the meeting was over, she was told that she "had to leave the courthouse by

4

4pm or face arrest for criminal trespass." She says that she was then escorted out of the courtroom by two deputy sheriffs.

{¶ 9} In their letter to Andrews, the judges stated that they had "investigated a multitude of claims and allegations, and ha[d] determined that the operation of the court is best served if the performance of your duties as clerk of courts is modified." The letter stated that the accompanying journal entry contained "what, in the exhaustive and considered opinion of all of the judges served by you, is necessary for the continued existence and operation of the court, and without which, the court cannot operate as required by the Ohio constitution and law." In the letter, the judges directed Andrews to review the entry and—by noon on Sunday, March 6—inform Judge Lucci whether she would comply with its terms. The judges said that if Andrews would not agree to comply with the entry, they would "immediately journalize and enforce [it] to the fullest extent of [their] authority."

{¶ 10} The unfiled entry (hereafter, "the March entry") reported that seven deputy clerks had resigned in the past year, and the entry provided details from interviews with current and former deputy clerks. Among other things, the entry alleges:

- "The clerk has regularly and frequently engaged in profanity laced explosive tirades in the presence of employees and visitors to the office of the clerk."
- "As a result of the behavior of the clerk of courts, as detailed throughout this order, employees of the clerk are exhibiting physical manifestations of the increased stress, including massive headaches and stomach distress, nausea, vomiting, weeping at their desks, loss of sleep and appetite, digestive issues, and increasing anxiety. Employees are beginning to take medications that they never used before to help them sleep. Employees are drinking more than usual to cope with the stress. Employees begin feeling

dread on Sunday evening about having to come to work the following day. They are breaking down in tears over the stress and the apprehension of being belittled in front of other staff."

- "Employee mental health and productivity are being affected, and they are complaining of symptoms such as post-traumatic stress, especially when the clerk slams or pounds her fists on a table or countertop accompanied by the use of the vilest and foul language, including the words, 'f—k', 'c—t', and 's—t.' She frequently calls people 'c—ts' and 'bitches.' "

- "The clerk exhibits paranoid behavior, which has a deleterious effect upon the deputy clerks, leaving them with the feelings that they are not trusted and/or cannot perform their duties without extreme surveillance. The clerk has required members of the court's information technology department to audio record, and inform vendors of the requirement to audio record, all conversations between them and the members of the I.T. department * * *."

- "Employees are fearful to approach the judges about their concerns because they believe they will be fired if the clerk finds out. The clerk tells employees that she has 'something' (presumably, evidence of crimes, ethical violations, or other wrongdoing) on all of the judges and that, if the clerk 'goes down,' she is 'taking the judges with her.' It is reasonable to surmise that her purpose in so saying this is to discourage employee complaints to the judges * * *."

- "The clerk makes statements, perhaps in a failed attempt at humor, about 'taking (employees) out back and shooting (them).' Employees are fearful for their own safety in the workplace, and have requested that the clerk go through security like all other employees. The employees are 'very scared of (the clerk) and what she is capable of doing to (them) and (their) fellow co-workers.' "

**{¶ 11}** Based on the information they received, the judges gave Andrews numerous "directives," including:

- "The clerk of courts may be physically present in the office of the clerk in the courthouse (West Annex) on the first business day of each month, between the hours of 8:30 a.m. and 4:00 p.m. to perform the duties of clerk of courts, subject to the restrictions and provisions set forth in this entry. The clerk may not be present in the courthouse at any other time or day. The supervising deputy clerks of court shall oversee the day-to-day operations of the court."

- "The clerk shall not: (1) terminate, remove, discipline, or suspend any employee from employment; (2) withhold from any employee any salary increases or employee benefits to which the employee is otherwise entitled; (3) transfer or reassign any employee; (4) deny any employee a promotion that otherwise would have been received; or (5) reduce any employee in pay or position, without prior consultation with, and the concurrence of, the administrative judge of the general division or the domestic relations judge."

- "The clerk shall not make public statements or accusations about allegations she may have about criminal or other illegal activities occurring within the office of the clerk of courts, or by predecessors in the office of the clerk of courts, unless in consultation with, or requested by, the prosecutor's office or law enforcement as part of a bona fide investigation."

**{¶ 12}** On March 5, Andrews agreed to abide by the terms of the unfiled March entry. On March 23, Judge Lucci emailed Andrews, directing her not to

occupy a particular noncourthouse office because some of the clerk's legal-division employees work there.

{¶ 13} On April 18, Andrews filed this action, seeking a writ of mandamus to compel Judges Lucci, Culotta, O'Donnell, Condon, and Falkowski to vacate the unsigned and unfiled draft November entry, the unfiled March entry, and the directive that Judge Lucci sent to her by email on March 23. Andrews also sought a writ of prohibition to prevent the judges from enforcing the entries and directives.

{¶ 14} On April 29, Andrews notified the judges that she would be returning to her courthouse office fulltime on May 3. She returned to the office on Monday, May 2 (as she was allowed to do under the judges' directive), and again on May 3.

{¶ 15} On May 4, all seven judges signed and filed with the court a 26-page journal entry (hereafter, "the May entry") that repeats many of the allegations contained in the unfiled March entry and includes additional information related to Andrews's interactions with the court's IT department (some of which is similar to what was included in the unsigned and unfiled draft November entry). The May entry states that "the judges have continued receiving substantial, credible reports that the clerk continues her abuse of employees and engages in other conduct unbecoming [of] her office." And it states that the judges found that Andrews "is unable to perform the duties" of her office and "is engaging in conduct which threatens and is detrimental to the operation and mission of the courts."

{¶ 16} The May entry explains that seeking Andrews's removal from office under R.C. 3.08 would require the signatures of more than 14,000 Lake County electors and that "[s]uch a removal action would fail to provide a timely remedy." It then orders Andrews to abide by many of the same limitations she had previously agreed to, including that Andrews's presence at the courthouse shall be restricted to only one day a month, that the supervising deputy clerks shall oversee the day-to-day operations of the clerk's legal division, that Andrews shall be prohibited from making certain management decisions regarding the legal division's

8

employees without the concurrence of the administrative judge, that Andrews shall be prohibited from managing personnel in the court's IT department, and that Andrews shall be prohibited from making "unsupported public statements or accusations" of criminal activity "occurring within the legal division * * * or by predecessors in the legal division." The entry states that any violation of its terms will subject Andrews to a show-cause hearing regarding why she should not be held in contempt, at which three of the respondent judges would determine all the issues. It also states that the court will issue additional entries each month "identify[ing] relevant changes to the circumstances outlined [in the May entry], as well as an analysis of whether the directives within th[e] [e]ntry are ripe for modification."

{¶ 17} On May 10, Andrews filed an amended complaint,[2] seeking a writ of prohibition to prevent the judges from enforcing the "Improper Journal Entries," from exercising judicial power in connection with the entries, and from constructively removing her from office. Andrews also seeks a writ of mandamus compelling the judges to vacate the entries. In the alternative, Andrews seeks a writ of quo warranto "restoring her to her elected office."

{¶ 18} The judges moved to dismiss the amended complaint. Andrews opposes the motion to dismiss. The Ohio Clerk of Courts Association, as amicus curiae, has filed a memorandum urging denial of the judges' motion to dismiss and granting of the writ.

### III. ANALYSIS

{¶ 19} In considering the judges' motion to dismiss, we must presume that Andrews's factual allegations and the documents incorporated into her amended complaint are true, and we must make all reasonable inferences in Andrews's favor. *See Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-

---

2. Andrews filed her original complaint against the five judges who signed the unfiled March entry. Two additional judges (Judges Lawson and Bartolotta) signed the May entry, and Andrews added them as respondents in her amended complaint.

2057, 929 N.E.2d 434, ¶ 12.  We may dismiss this action only if it appears beyond doubt that Andrews can prove no set of facts entitling her to relief.  *See State ex rel. Brady v. Pianka*, 106 Ohio St.3d 147, 2005-Ohio-4105, 832 N.E.2d 1202, ¶ 6.

## A.  Prohibition

{¶ 20} To be entitled to a writ of prohibition, a relator usually must establish by clear and convincing evidence (1) that the respondent is about to exercise judicial or quasi-judicial power without authority, (2) that the exercise of that power is unauthorized by law, and (3) that the relator has no adequate remedy in the ordinary course of the law.  *State ex rel. Sliwinski v. Burnham Unruh*, 118 Ohio St.3d 76, 2008-Ohio-1734, 886 N.E.2d 201, ¶ 7; *State ex rel. Evans v. McGrath*, 153 Ohio St.3d 287, 2018-Ohio-3018, 104 N.E.3d 779, ¶ 4.  Andrews, however, primarily seeks to undo the judges' actions.  For a corrective writ of prohibition to issue, Andrews must demonstrate that the judges patently and unambiguously lacked jurisdiction to take the actions of which she complains.  *See State ex rel. Feltner v. Cuyahoga Cty. Bd. of Revision*, 160 Ohio St.3d 359, 2020-Ohio-3080, 157 N.E.3d 689, ¶ 6, 8 (lead opinion).  We therefore need not determine whether Andrews has an adequate remedy in the ordinary course of the law.  *See State ex rel. Koren v. Grogan*, 68 Ohio St.3d 590, 595, 629 N.E.2d 446 (1994).

### 1.  Exercise of judicial power

{¶ 21} Andrews seeks a writ of prohibition to prevent the judges "from enforcing any term, directive, or order" in its "Improper Journal Entries * * * including, but not limited to, the journalized May [entry], and to prevent [the judges] from exercising judicial power in connection with any of them."  Andrews does not precisely define the term "Improper Journal Entries," but she appears to refer to the unsigned and unfiled draft November entry, the unfiled March entry, and the journalized May entry.  The judges do not dispute that the May entry was an exercise of judicial power, but they argue that their actions relating to Andrews that predated the issuance of the May entry were not exercises of judicial power.

10

**{¶ 22}** In opposing the judges' motion to dismiss, Andrews does not argue that the unsigned and unfiled draft November entry was an exercise of judicial power, but she does argue that the judges exercised judicial power when Judge Lucci gave her an ultimatum in his courtroom on March 4 demanding that she agree to abide by the terms of the signed but unfiled March entry or else the entry would be filed and enforced. Andrews argues that the judges exercised judicial power at that time under the standard discussed in *State ex rel. Fiser v. Kolesar*, 164 Ohio St.3d 1, 2020-Ohio-5483, 172 N.E.3d 1, ¶ 11, 13-14.

**{¶ 23}** We reject this argument for two reasons. First, *Fiser* is distinguishable from the facts of this case because it involved a journalized entry. *See id*. at ¶ 5. Here, the judges did not exercise judicial power in March because they did not file the March entry. *See* Civ.R. 58(A)(1) ("A judgment is effective only when entered by the clerk upon the journal"). Second, even if we were to credit Andrews's argument that the judges threatened in March to exercise judicial power, it is evident that the judges followed through on that threat when they journalized the May entry. The May entry, in other words, constituted the judges' fulfillment of what they had threatened to do.

**{¶ 24}** Accordingly, the May entry is the only entry at issue regarding the requested writs.

### 2. *Patent and unambiguous lack of jurisdiction*

**{¶ 25}** This court has long recognized that a clerk of courts "is only an arm of the court," *State ex rel. McKean v. Graves*, 91 Ohio St. 23, 24, 109 N.E. 528 (1914), and that a clerk's duties are "ministerial," *State ex rel. Glass v. Chapman*, 67 Ohio St. 1, 6, 65 N.E. 154 (1902). Moreover, R.C. 2303.26 provides that "in the performance of official duties the clerk [of the court of common pleas] shall be under the direction of the court."

**{¶ 26}** Andrews does not dispute that the judges have some authority to direct her performance under R.C. 2303.26. She argues, however, that the judges

have exceeded that authority. She contends that the May entry prevents her from performing her duties as the clerk and that the judges have effectively removed her from office.

{¶ 27} Ohio law vests common pleas courts with jurisdiction to remove a public officer from office. *See* R.C. 3.08. The standard for doing so is prescribed in R.C. 3.07, which provides that an officeholder may be removed from office if a judge or jury finds the officeholder guilty of "misconduct in office" for "willfully and flagrantly exercis[ing] authority or power not authorized by law, [or] refus[ing] or willfully neglect[ing] to enforce the law or to perform any official duty imposed upon him by law." *See also* R.C. 3.08. Removal from office also may be based on an officeholder's "gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance, or nonfeasance." R.C. 3.07.

{¶ 28} A common pleas court's jurisdiction to remove a person from public office is invoked only when a sufficient number of qualified electors have signed a complaint and filed it in the court. *See* R.C. 3.08; *see also State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 12 (stating that the filing of a complaint invokes a court's jurisdiction). Moreover, establishing personal jurisdiction in a removal action requires service of the complaint on the officeholder. *See* R.C. 3.08; *see also State ex rel. Ballard v. O'Donnell*, 50 Ohio St.3d 182, 553 N.E.2d 650 (1990), paragraph one of the syllabus (holding that a court lacks jurisdiction to render judgment against a person who was not served summons, did not appear, and was not made a party to the case).

{¶ 29} Andrews argues that the judges lack subject-matter and personal jurisdiction to remove her from office absent the filing of a case against her under R.C. 3.08. She points out that in the May entry, the judges stated that a proceeding under R.C. 3.08 would require the signatures of more than 14,000 Lake County electors and that "a removal action would fail to provide a timely remedy." The judges dispute Andrews's assertion that they have removed her from office; they

argue that they have simply told Andrews how to perform her duties as the clerk of courts. In other words, the judges do not claim that they have jurisdiction to remove Andrews from office absent proceedings under R.C. 3.07 and 3.08.

{¶ 30} Yet the judges' May entry does just that. As an elected official, a clerk of courts occupies a public office distinct from the court and its judges. *See* R.C. 2303.01; *State ex rel. Ware v. Kurt*, ___ Ohio St.3d ___, 2022-Ohio-1627, ___ N.E.3d ___, ¶ 15. But certain provisions in the judges' entry give ultimate control of the clerk's legal division to the judges, thereby undermining the independence of Andrews's office and preventing Andrews from doing her job.

{¶ 31} To start, paragraph No. 100 of the May entry prohibits Andrews from being in the clerk's legal-division offices, including the clerk's courthouse office, except for one day a month. That paragraph also provides that "[t]he supervising deputy clerks of court shall oversee the day-to-day operations of the court." In addition, paragraph No. 111 of the entry provides:

> The clerk shall not: (1) terminate, remove, discipline, or suspend any legal division employee from employment; (2) withhold from any legal division employee any salary increases or employee benefits to which the employee is otherwise entitled; (3) transfer or reassign any legal division employee; (4) deny any legal division employee a promotion that otherwise would have been received; or (5) reduce any legal division employee in pay or position, without prior consultation with, and the concurrence of, the administrative judge of the general division or the presiding judge. The clerk shall not hire any new legal division employee without prior consultation with, and the concurrence of, the administrative judge of the general division.

{¶ 32} R.C. 2303.05 authorizes a clerk of courts to "appoint one or more deputies." A "deputy" is "[a] person appointed or delegated to act as a substitute for another, esp. for an official," *Black's Law Dictionary* 556 (11th Ed.2019), or "a person appointed, nominated, or elected as the substitute of another and empowered to act for him, in his name, or in his behalf," *Webster's Third New International Dictionary* 607 (2002). A clerk's authority to appoint deputies necessarily implies the clerk's authority to supervise and manage them. *See State ex rel. Minor v. Eschen*, 74 Ohio St.3d 134, 139, 656 N.E.2d 940 (1995) ("the power of removal is regarded as incident to the power of appointment"); *Alf v. Hunsicker*, 82 Ohio App. 197, 80 N.E.2d 511 (1st Dist.1947), paragraph one of the syllabus ("A deputy clerk of courts holds his appointment at the pleasure of the clerk of courts and his tenure may be terminated at any time and for any cause"). Yet paragraphs Nos. 100 and 111 of the May entry prevent Andrews from having any meaningful involvement in or control over the operation of the clerk's legal division. In fact, paragraph No. 100 gives certain deputy clerks day-to-day control of the legal division, and paragraph No. 111 gives ultimate oversight of the office's legal division to the administrative judge. These provisions do not merely *direct* Andrews in the performance of her duties as the clerk under R.C. 2303.26; they take away Andrews's ability to carry out numerous statutory duties imposed on her as the clerk and make the administrative judge—Judge Lucci—the de facto clerk of the office's legal division.

{¶ 33} In addition, paragraph No. 130 of the May entry provides:

> The Clerk of Courts shall have no authority to approve, disapprove, interfere with, diminish, modify, or require the approval, including prior and post, for the purchase, acquisition, use, disposal, or retirement of equipment, supplies, hardware, software, or other technology that has been approved or directed by the judges

> to be purchased, acquired, used, disposed, or retired, whether used exclusively or in part by the clerk's office or otherwise.

As a general matter, common pleas courts have the power to order funding that is necessary to the administration of their business. *See State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 25. But again, the clerk of courts' office is an independent office, not a legislative body that appropriates funds. A common pleas court may have some authority to direct the use of funds derived from the clerk's collection of certain fees, *see, e.g.*, R.C. 2303.201, but the judges have provided no legal support for paragraph No. 130, which purports to broadly authorize the court to direct the clerk's use of funds regardless of their source.

{¶ 34} As these provisions in the judges' May entry show, the entry does not merely direct Andrews in the performance of her duties; it effectively prevents Andrews from performing her duties and thus functionally removes her from her elected office. If Andrews is to be removed from office, her removal must be done according to the standard and procedure established by statute. *See* R.C. 3.07 and 3.08.

{¶ 35} Andrews also argues that the judges have exceeded their authority in restraining her speech through paragraph No. 110 of the May entry, which provides:

> The clerk shall not make unsupported public statements or accusations about allegations of criminal or other illegal activities occurring within the legal division office of the clerk of courts, or by predecessors in the legal division office of the clerk of courts. This in no way impedes her ability to consult or cooperate with her statutory and personal counsel, law enforcement, or any enforcement agency as part of a bona fide inquiry, report, or

investigation; or where her statements are expressly protected by state or federal law.

{¶ 36} Unlike the restrictions discussed above, paragraph No. 110 does not prevent Andrews from carrying out any duty that the law requires of a clerk of courts; that is, Andrews has not shown that the judges have effectively removed her from office by including paragraph No. 110 in the May entry. But R.C. 2303.26—the statute the judges rely on as the source of their jurisdiction—does not authorize a court or its judges to restrain the content of a clerk of courts' off-duty speech. Even if a common pleas court has subject-matter jurisdiction to order a restraint on speech in an ordinary adversarial proceeding, the directives within paragraph No. 110 were not issued in an ordinary proceeding in which the court's general subject-matter jurisdiction was invoked. The directives in paragraph No. 110 were issued as a sua sponte administrative action, under which the judges' narrow authority allowed them to direct Andrews "in the performance of [her] official duties," R.C. 2303.26. Paragraph No. 110 does not constitute "direction" concerning Andrews's performance of her official duties.

{¶ 37} We deny the judges' motion to dismiss, because Andrews's allegations show that the judges patently and unambiguously exceeded their jurisdiction by effectively removing her from office. Moreover, because "it appears beyond doubt," *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 14, that Andrews is entitled to relief in prohibition, we issue a writ of prohibition vacating the May entry and prohibiting the judges from imposing similar restrictions on Andrews in the future without jurisdiction.

## B. Mandamus

{¶ 38} Andrews also seeks a writ of mandamus to compel the judges to vacate the May entry. "[W]here a lower court patently and unambiguously lacks jurisdiction over the cause, prohibition and mandamus will issue to prevent any future unauthorized exercise of jurisdiction and to correct the results of prior jurisdictionally unauthorized actions." *State ex rel. Dannaher v. Crawford*, 78 Ohio St.3d 391, 393, 678 N.E.2d 549 (1997). Because Andrews has shown that the judges patently and unambiguously lack jurisdiction to prevent her from performing the essential duties of her office, we deny the judges' motion to dismiss the mandamus claim and issue a writ of mandamus ordering the judges to vacate the May entry.

## C. Quo warranto

{¶ 39} Andrews seeks a writ of quo warranto as an alternative remedy in the event that we do not issue writs of prohibition and mandamus. Because we issue writs of prohibition and mandamus, we deny the quo warranto claim as moot.

## IV. CONCLUSION

{¶ 40} Because the judges have acted with a clear lack of jurisdiction, we deny their motion to dismiss and issue writs of prohibition and mandamus. Andrews's alternative request for a writ of quo warranto is denied as moot.

Writs of prohibition and mandamus granted
and writ of quo warranto denied as moot.

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., concurs with respect to the majority's denial of the writ of quo warranto and its conclusion that Lake County is not a proper party and otherwise dissents.

_____

Porter, Wright, Morris & Arthur, L.L.P., Edmund W. Searby, Kevin J.

Kelley, and L. Bradfield Hughes, for relator.

Montgomery Jonson, L.L.P., Kimberly V. Riley, and Linda L. Woeber, for respondents.

Roetzel & Andress, L.P.A., and Stephen W. Funk, urging granting of the writ for amicus curiae, Ohio Clerk of Courts Association.

—————————