[Cite as *Hignight v. Knepp*, 2023-Ohio-4855.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio, ex rel. Stephanea Hignight          Court of Appeals No.  L-23-1305

    Relator

v.

Linda M. Knepp, et al.          **DECISION AND JUDGMENT**

    Appellant          Decided:  December 29, 2023

* * * * *

**MAYLE, J.**

{¶ 1} This case is before the court on the December 26, 2023 complaint for a writ of prohibition filed by relator, Stephanea Hignight.  Hignight alleges that respondents, Judge Linda Knepp and the Lucas County Court of Common Pleas, Juvenile Division ("juvenile court"), lack jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to proceed with a custody action relating to Hignight's children, Z.H. and M.H.  She seeks a writ of prohibition preventing Judge Knepp and the

juvenile court from hearing and adjudicating the custody case. Because it appears that Hignight's complaint may have merit, we grant an alternative writ as to Judge Knepp to allow the parties to more fully develop the facts underlying the complaint. However, because the juvenile court cannot sue or be sued, we dismiss the complaint against the juvenile court.

## I. Background

{¶ 2} In her complaint, Hignight alleges that she is the adoptive mother of Z.H. and M.H. Before Hignight adopted the children, they were in foster care and placed with Hignight and her then-girlfriend, Jill Hoffman. Hignight's adoption of Z.H. was finalized in August 2020, and her adoption of M.H. was finalized in April 2021. Hoffman is not listed as a petitioner on the decrees of adoption that Hignight attached to her complaint. In July 2020, before either adoption was finalized, Hignight ended her relationship with Hoffman. Although Hignight contends that she was not in a relationship with Hoffman after July 2020, the adoption decrees show that the children's surname includes both Hignight's last name and Hoffman's last name. In her affidavit, Hignight says that Hoffman had "sporadic and infrequent contact" with the children after July 2020. She also notes in the complaint that Hoffman was "on military duty" from October 2021 to July 2022.

{¶ 3} In June 2021, Hignight and the children moved to Michigan to live with Hignight's now-wife, Rachael Varga. Soon after, in September 2021, Hoffman filed the

2.

custody case underlying this action, juvenile court case No. 21286267. She asked for custody of the children, or, alternatively, for parenting time. At some point, the juvenile court granted Hoffman temporary visitation.

{¶ 4} Two years later, in August 2023, Hignight and Varga married. Three weeks after marrying, Hignight and Varga filed petitions for a stepparent adoption of each child in the 22nd Judicial Circuit, Family Division, in Washtenaw County, Michigan. Hoffman moved to intervene in the Michigan adoption case. It appears that Hoffman's motion is still pending and that the Michigan court is aware of the Lucas County custody case, but Hignight did not include much information about the Michigan case in her complaint.

{¶ 5} After filing the adoption petitions, Hignight filed a motion to stay the juvenile court proceedings and terminate the temporary visitation orders. The juvenile court's September 15, 2023 judgment entry denying her motion indicates that Hignight argued there, as she does here, that the juvenile court was required to cede jurisdiction over its case or stay its proceedings once she filed the Michigan adoption petitions. The juvenile court disagreed with Hignight's position. It found that an out-of-state court's adoption proceedings filed nearly two years after its custody case did not have priority over the custody case.

{¶ 6} In her complaint, Hignight asks us to issue a writ of prohibition preventing Judge Knepp and the juvenile court from continuing to hear the custody case so that the

3.

Michigan court can make its adoption determination, and argues that the juvenile court lacks subject matter jurisdiction over the case under the UCCJEA.

## II. Law and Analysis

{¶ 7} "The purpose of a writ of prohibition is to restrain inferior courts from exceeding their jurisdiction." *State ex rel. Kerr v. Kelsey*, 6th Dist. Wood No. WD-19-047, 2019-Ohio-3215, ¶ 5, quoting *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 73, 701 N.E.2d 1002 (1998). To be entitled to a writ of prohibition, a relator must establish that "(1) [the respondent] is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists." *State ex rel. Henry v. McMonagle*, 87 Ohio St.3d 543, 544, 721 N.E.2d 1051 (2000). If the respondent patently and unambiguously lacks jurisdiction, the relator need not demonstrate that she lacks an adequate remedy in the ordinary course of law. *State ex rel. Davis v. Kennedy*, 2023-Ohio-1593, --- N.E.3d ----, ¶ 10.

{¶ 8} Here, Hignight argues that the juvenile court lacks jurisdiction over the custody case for two reasons. First, relying on the Ohio Supreme Court's recent decision in *Davis*, she contends that Judge Knepp or the juvenile court issuing temporary orders in the custody case would interfere with the Michigan court's exclusive jurisdiction over the adoption case. Her argument is misplaced.

4.

**{¶ 9}** In *Davis*, the Supreme Court determined that the jurisdiction of a juvenile court to issue visitation orders relating to a child was subordinate to a probate court's jurisdiction over adoption proceedings. *Id.* at ¶ 24. Underlying this decision is Ohio's statutory scheme that gives probate courts jurisdiction—exclusive of all other state courts—to determine a child's preadoption placement. *See id.* at ¶ 23, 26. Considering that *Davis* is heavily based on juvenile and probate courts' statutorily-granted jurisdiction, we do not believe that its holding regarding a jurisdictional dispute between two Ohio courts can simply be extrapolated to cover a jurisdictional dispute between an Ohio court and an out-of-state court that does not draw its jurisdiction from the Ohio Revised Code. Nothing in Hignight's complaint convinces us otherwise.

**{¶ 10}** Second, Hignight alleges that the juvenile court lacks subject matter jurisdiction over the custody case under the UCCJEA, as adopted in R.C. Chapter 3127, which "address[es] interstate recognition and enforcement of child custody orders * * *." R.C. 3127.01(A). Whether an Ohio court has jurisdiction over a custody case that involves, or potentially involves, custody determinations from other states is outlined in R.C. 3127.15(A)(1) to (4).

**{¶ 11}** Before looking at the jurisdictional statute, some definitions are necessary. An "initial custody determination" is "the first child custody determination concerning a particular child." R.C. 3127.01(B)(8). A "child custody determination" is, generally speaking, a court order that "provides for legal custody, physical custody, parenting time,

5.

or visitation with respect to a child." R.C. 3127.01(B)(3). A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *." R.C. 3127.01(B)(7). Any "temporary absence" is counted as part of the six-month period. *Id.* Finally, a "person acting as a parent" is someone other than a parent who (1) at the time the custody action is filed, has physical custody of the child or, within one year before filing, had physical custody of the child for six consecutive months (including any temporary absence) and (2) has been awarded or claims a right to legal custody of the child. R.C. 3127.01(B)(13).

{¶ 12} Under R.C. 3127.15, an Ohio court has jurisdiction to make an initial custody determination only if, as potentially applicable here, (1) Ohio is the child's home state on the day the custody action is filed; (2) Ohio was the child's home state within six months before filing and the child is no longer in Ohio, but a parent or person acting as a parent still lives here; or (3) another state's court does not have home-state jurisdiction, as defined in R.C. 3127.15(A)(1), the child and at least one parent or person acting as a parent have a "significant connection" with Ohio that is beyond mere physical presence, and there is "substantial evidence" in Ohio regarding the child's "care, protection, training, and personal relationships." R.C. 3127.15(A)(1)-(2). The rules outlined in R.C. 3127.15(A) are "the exclusive jurisdictional basis * * *" for an Ohio court to make a child custody determination under the UCCJEA. R.C. 3127.15(B).

6.

{¶ 13} Hignight claims that Hoffman filed the juvenile court custody case on September 22, 2021. Hignight presented evidence in her complaint that she moved out of Ohio in June 2021, several months before Hoffman filed her case. Thus, because the children had not lived in Ohio for six consecutive months before September 22, 2021, Ohio was not their home state at the time of filing. R.C. 3127.01(B)(7); R.C. 3127.15(A)(1). However, the children had lived in Ohio until June 2021, which was "within six months before" filing, and were absent from the state, so jurisdiction is proper here if "a parent or person acting as a parent continues to live in this state." R.C. 3127.15(A)(1). Hignight does not live in Ohio, so the question becomes whether Hoffman, who still lives here, is considered a "person acting as a parent."

{¶ 14} The evidence in Hignight's complaint shows that Hoffman is not the children's parent, claimed the right to legal custody of the children by filing her action in the juvenile court, and did not have physical custody of the children at the time of filing. R.C. 3127.01(B)(13). Although the complaint is not as clear on this point, the evidence also tends to support a finding that Hoffman did not have physical custody of the children for six consecutive months (inclusive of any temporary absences from the children) in the year immediately before filing. *Id.* Specifically, Hignight said that she ended her relationship with Hoffman in July of 2020—more than a year before filing—and that Hoffman had only "sporadic and infrequent contact" with the children after that. If that is

7.

the case, Hoffman would not qualify as a "person acting as a parent," and the trial court would not have jurisdiction under R.C. 3127.15(A)(1).

{¶ 15} It also appears that the juvenile court lacks jurisdiction under R.C. 3127.15(A)(2). At the time of filing, the children had lived in Michigan for approximately three months, which was not long enough for Michigan to become the children's home state. R.C. 3127.01(B)(7). Thus, Michigan did not have home-state jurisdiction under section (A)(1). But for jurisdiction to be proper in Ohio under section (A)(2), the children and either Hignight or Hoffman must have a significant connection to Ohio (beyond mere physical presence) and there must be substantial evidence of the children's care, protection, training, and personal relationships that is available in Ohio. Hignight and Varga each said in her affidavit that Hignight and the children were living in Michigan at the time of filing and that Hignight had taken actions indicating that the move was permanent, such as enrolling the children in a Michigan daycare and buying a house with Varga. Hignight included evidence of the children's enrollment in a Michigan daycare in June and July 2021, Hignight's other child enrolling in a Michigan school in August 2021, and Hignight's agreement to sell her Toledo home in September 2021. This supports a finding that the children and Hignight have a significant connection to Michigan, and the evidence required under (A)(2)(b) is located in Michigan.

8.

**{¶ 16}** Based on the potential lack of subject matter jurisdiction in the juvenile court, we issue an alternative writ and order that Judge Knepp, within 14 days, either do the act requested by Hignight in the petition or show cause why she is not required to do so by filing an answer to Hignight's petition pursuant to Civ.R. 8(B) or a motion to dismiss Hignight's petition pursuant to Civ.R. 12. Thereafter, this case shall proceed pursuant to the Ohio Rules of Civil Procedure.

**{¶ 17}** With respect to Hignight's complaint for a writ of prohibition against the juvenile court itself, however, we find the complaint not well-taken because the common pleas court is not a proper party. *See, e.g., State ex rel. Cleveland Mun. Court v. Cleveland City Council,* 34 Ohio St.2d 120, 121, 296 N.E.2d 544 (1973) ("A court is defined to be a place in which justice is judicially administered. * * * Absent express statutory authority, a court can neither sue nor be sued in its own right.'' (Internal quotation omitted.)); *State ex rel. Andrews v. Lake Cty. Court of Common Pleas*, 170 Ohio St.3d 354, 2022-Ohio-4189, 212 N.E.3d 914, ¶ 1, fn. 1 ("Because a court is not sui juris and may not be sued in its own right, the court of common pleas is not a properly named party in this case."). Accordingly, we dismiss Hignight's complaint as to the Lucas County Court of Common Pleas Court, Juvenile Division.

### III. Conclusion

**{¶ 18}** Because the juvenile court is not a proper party, we dismiss Hignight's complaint against the Lucas County Court of Common Pleas, Juvenile Division. Judge

Knepp has 14 days from the date of this entry to either do the act requested by Hignight in the petition or show cause why she is not required to do so by filing an answer to Hignight's petition pursuant to Civ.R. 8(B) or a motion to dismiss Hignight's petition pursuant to Civ.R. 12. Thereafter, this case shall proceed pursuant to the Ohio Rules of Civil Procedure.

{¶ 19} Additionally, all proceedings in the underlying custody case, case No. 21286267, are hereby stayed pending the outcome of this action.

{¶ 20} **To the clerk: Manner of service.**

{¶ 21} The sheriff of Lucas County shall immediately serve, **upon the respondent** by personal service, a copy of this alternative writ.

{¶ 22} The clerk is further directed to immediately serve **upon all other parties** a copy of this alternative writ in a manner prescribed by Civ.R. 5(B).

{¶ 23} It is so ordered.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE